```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                   FORT WORTH DIVISION

JAMES TESI                      §
                                §
VS.                             §   CIVIL ACTION NO. 4:10-CV-272-Y
                                §
CHASE HOME FINANCE, LLC,        §
ET AL.                          §
```

## ORDER GRANTING MOTION TO DISMISS

Before the Court is the Motion to Dismiss or in the Alternative, for More Definite Statement (doc. #4) filed by defendants Chase Home Finance, LLC ("Chase"), JPMorgan Chase & Co. ("JPMorgan"), and James Dimon. After review, the Court concludes that Plaintiff has not shown that this Court has personal jurisdiction over Dimon, and Plaintiff has failed to plead any claim upon which relief may be granted against Dimon, Chase, or JPMorgan. Hence, the motion to dismiss will be granted.

I. Background

Pro se plaintiff James Tesi commenced this action in the 48th Judicial District Court, Tarrant County, Texas. Tesi alleges that Defendants foreclosed on his residential property, located at 669 Bear Creek Drive, Hurst, Texas 76054 ("the Bear Creek property"), despite the lack of any valid mortgage or other contractual arrangement between Tesi and Defendants. According to Tesi, Defendants have failed to produce a "genuine verified" copy of the original note or mortgage contract by which he allegedly purchased the property. Contrarily, Tesi alleges he twice offered bonds in

full payment of the note. These bonds were not credited against the note and the Bear Creek property was foreclosed upon.

Tesi insists that Defendants' refusal to accept the bonds amounts to interference with interstate commerce and bank robbery. Further, Tesi avers that Defendants' attempts to collect on the note and the foreclosure on the Bear Creek property amount to unfair debt-collection practices, extortion, fraud, and a violation of the Fourth and Fourteenth Amendments of the United States Constitution.

Defendants removed the case based on federal-question jurisdiction and now seek dismissal of the case on a number of grounds. First, Dimon argues that this Court does not have personal jurisdiction over him. Next, Dimon joins with Chase and JPMorgan in arguing that Tesi has failed to state a claim upon which relief may be granted. Finally, and in the alternative, these defendants seek a more definite statement of Tesi's claims.

II. Discussion

    A. Personal Jurisdiction Over Dimon

        1. Legal Standard

"When a federal question case is based upon a federal statute that is silent as to service of process . . . [Federal Rule of Civil Procedure] 4(e) requires that the state's standard of amenability to jurisdiction apply." *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 419 (5th Cir. 1986). Neither

the defendants nor Tesi has brought to the Court's attention any special provision regarding the service of process relevant to this case. Thus, the Court will look to the Texas long-arm statute, which has been interpreted to extend to the limits of due process. *Mink v. AAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). The Court need only determine whether exercising jurisdiction over Coffin would be consistent with the Due Process Clause of the Fourteenth Amendment. *Id.* at 335-36.

The due-process analysis involves two inquiries. First, a court must determine whether the "defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Id.* Second, a court must evaluate whether the exercise of jurisdiction over the defendant would offend traditional notions of fair play and substantial justice. *Id.*

A defendant's contacts with the forum may give rise to either "specific" or "general" jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Mink*, 190 F.3d at 336. Contacts that are unrelated to the plaintiff's cause of action, but that are sufficiently "substantial, continuous, and systematic" may give rise to general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).

The party invoking a federal court's jurisdiction bears the burden of establishing sufficient contacts by the defendant with the forum to support the court's exercise of jurisdiction. *See Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990). A court may decide the jurisdictional issue based on affidavits and other evidence in the record. *See id.; see also Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 95 (5th Cir. 1992). Unless a court conducts a hearing on the jurisdiction issue, the plaintiff must make only a "prima facie showing" of facts supporting the court's exercise of jurisdiction. *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 342-43 (5th Cir. 2004). Proof by a preponderance of evidence is not required. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). "In determining whether a prima facie case exists" a court "must accept as true the plaintiff's uncontroverted allegations, and resolve in its favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation." *Freudensprung*, 379 F.3d at 343 (citations and quotations omitted).

2. Analysis

In the motion to dismiss, Dimon explains that he is a resident of New York with no personal business contacts with the State of Texas. Dimon insists that, although he is the chief executive officer of JPMorgan, he does not personally conduct business in Texas and does not avail himself of the privileges of conducting

4

business there.  Hence, Dimon contends that he has no specific contacts with Texas to which Tesi's claims could relate and give rise to specific jurisdiction, let alone the sort of continuous and systematic contacts that would give rise to general jurisdiction over Dimon in Texas.

But the Court may not rely on Dimon's arguments alone.  As noted, unless the Court conducts a hearing on the issue of personal jurisdiction, the Court's ruling is based on the evidence in the record, such as affidavits, as well as the plaintiff's uncontroverted allegations.  The unsworn assertions in the motion to dismiss regarding Dimon's contacts with Texas are not evidence. *See Polisoto v. Weinberger*, 638 F. Supp. 1353, 1364 (W.D. Tex. 1986) (noting legal memoranda and arguments are not evidence) (citing *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978)).

They are enough, however, to put Tesi on notice that Dimon disputes personal jurisdiction.  The party invoking federal jurisdiction bears the burden of making a prima-facie showing in support of that jurisdiction.  *See Bullion*, 895 F.2d at 216-17.  Tesi's complaint is devoid of any allegation of contacts by Dimon with Texas.  And Tesi has not responded to the motion to dismiss.  Thus, Tesi has failed to make even a prima-facie showing that this Court has jurisdiction over Dimon.  "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant,

5

the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) and citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). Tesi has presented nothing to the Court to show that the relationship between Dimon, the State of Texas, and this litigation is such that Dimon should have anticipated being haled into a court in Texas. *Cf. McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir. 2009) (stating that "the touchstone [of the minimum-contacts analysis] is whether the defendant's conduct shows that it reasonably anticipates being haled into court"). Thus, Dimon's motion to dismiss for lack of personal jurisdiction will be granted.

    B. Failure to State a Claim

      1. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim is

6

viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting Wright & Miller, Federal Practice and Procedure § 1357 (1969)).  The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum*, 677 F.2d at 1050.  The Court must also "limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

2. Analysis

Dimon, as well as Chase and JPMorgan, seek dismissal of this case for failure to state a claim.  Again, Tesi has not responded to the motion.  And although this fact alone is not a proper basis for dismissal, *Johnson v. Pettiford*, 442 F.3d 917, 918-19 (5th Cir.

7

2006), the arguments made by these defendants, the deficiencies in Tesi's allegations they highlight, along with Tesi's failure to respond, convince the Court that the motion to dismiss should be granted and that dismissal, rather than granting leave to amend, is the proper course.  *Cf. United States v. Regents of Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (concluding that district court did not abuse its discretion in denying leave to amend when the plaintiff had a prior opportunity to amend in light of the defendant's objections).

First, these defendants point out that Tesi's complaint alleges that they have violated 42 U.S.C. § 1981 and the Fourth and Fourteenth Amendments to the United States Constitution.  Section 1981 is a prohibition on racial discrimination, *see Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 (1968), and there are absolutely no allegations that any of the defendants discriminated against Tesi. And as for Tesi's constitutional claims, private actors are only subject to constitutional liability if their actions amount to state action.  *See Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747-48 (5th Cir. 2001); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999); *Dobyns v. E-Systems, Inc.*, 667 F.2d 1219 (5th Cir. 1982).  Tesi alleges "all corporations are agencies of the government because they are 'incorporated' into the government" and that "all banks are instrumentalities of Congress." Tesi also alleges that the defendants deprived him of his rights

8

"under color of law." These first two of these allegations is legally inaccurate, and all are too conclusory to support the inference that the defendants are, in fact, state actors. *Cf. Yeager v. McGregor*, 980 F.2d 337, 339-43 (5th Cir. 1993) (discussing the tests to determine whether a defendant is a state actor).

Next, the defendants address Tesi's claim under the Fair Debt Collection Practices Act; specifically, 15 U.S.C. § 1692g(a). Tesi complains that the defendants have refused to produce a "genuine verified original note" for his inspection according to section 1692g(a). But section 1692g(a), while requiring a debt collector to send a consumer from whom it is attempting to collect a debt a notice containing specified information, does not require that the debt collector produce a copy of the original loan obligation.

Additionally, according to the defendants, Tesi's pleading fails to allege that they are "debt collectors" within the meaning of the Fair Debt Collection Practices Act. Under the act, a debt collector is one who uses an instrumentality of interstate commerce to collect debts on behalf of a third party, but "does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *see also* 15 U.S.C. § 1692a(6). There is no allegation that the defendants acted on behalf of any third

9

party. To the contrary, every indication is that these defendants are involved in the servicing of a mortgage on the Bear Creek property.

The defendants also seek dismissal of Tesi's claims premised on criminal statutes. Tesi complains that the defendants have violated 18 U.S.C. §§ 8 (defining "obligation or other security of the United States"), 242 (deprivation of rights of color of law), 891-94 (extortionate credit transactions), 1951 (interference with commerce by threats or violence), and 2113 (bank robbery and incidental crimes). Generally, a criminal statute does not provide a basis for civil liability and a private citizen has no standing to enforce a criminal statute. *See Gill v. Texas*, 153 Fed. Appx. 261, 262 (5th Cir. 2005) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)). There is nothing in the language of the statutes on which Tesi relies nor in his allegations to suggest that he may rely on or enforce such statutes in this private civil action.

The defendants next argue that Tesi's claim that their failure to accept bonds as payment violates 31 U.S.C. § 5118 and House Joint Resolution 192 should be dismissed. "House Joint Resolution 192 of 1933 involved the suspension of the gold standard." *Obersteller v. Select Portfolio Servicing*, No. 02:06-cv-451, 2007 WL 437790, at *1 (S.D. Tex. Feb. 6, 2007). The resolution was

10

enacted and is now codified at 31 U.S.C. § 5118(d), which provides "that obligations requiring repayment in gold and issued after October 1977 are satisfiable in fiat money." *Id.* "The statute is definitional only and provides no private right of action." *Wiggins v. Wells Fargo & Co.*, No. 3-09-CV-2003-N, 2010 WL 342246, at *2 (N.D. Tex. Jan. 29, 2010). And in any event, Tesi alleges that he attempted to pay off his mortgage note with bonds, not "fiat money" or "United States coin or currency" as covered by section 5118.

Tesi makes claims under what he purports to be laws of the Republic of Texas, including its "law governing the Foreclosing of Mortgages on Real and Personal Estates," which Tesi asserts was enacted in 1838 and 1840. Tesi also attempts to rely on the judgment of a Robertson county common law court of the Republic of Texas dated June 25, 2009. As argued by the defendants, chapter 51 of the Texas Property Code now governs foreclosure upon real property in Texas. *See Ackley v. FDIC*, 981 F. Supp. 457, 459 (S.D. Tex. 1997) (discussing the steps for a valid foreclosure under Tex. Prop. Code Ann. § 51.002(b) and citing *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982); *F.D.I.C. v. Massingill*, 24 F.3d 768, 775 (5th Cir. 1994)). And as for the judgment of the common law court of the Republic of Texas, the Republic of Texas joined the United States on December 29, 1845, and its government ceased operation in favor of the state government on February 16,

11

1846. *Kimmell v. Burnet County Tax Appraisal Dist.*, 835 S.W.2d 108, 109 (Tex. App.--Austin 1992, writ dism'd w.o.j.). The purported judgment appended to Tesi's complaint was not rendered by a court of any recognized sovereign and, therefore, is wholly without the force of law.

Tesi makes several conclusory allegations that, though sounding in legal terminology, fail to state a claim. Tesi alleges that the defendants' debt-collection efforts are "deceptive trade practices," perhaps referring to the Texas Deceptive Trade Practices Act. But Tesi makes absolutely no factual allegations in connection with this conclusory statement. Similarly, Tesi alleges that the defendants' collection efforts are a "breach of trust law," but never elaborates on those collection efforts, cites any provision of "trust law" relevant to this case, nor discusses how the defendants' actions violated that law.

The defendants have also violated section 3-603 of the Uniform Commercial Code according to Tesi. That section provides in relevant part that "[i]f tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender . . . ." Again, Tesi alleges that he tendered two bonds in payment of the promissory note secured by a deed of trust on the Bear Creek property. Copies of these "bonds," upon which Tesi relies in his complaint, were

12

apparently filed by Tesi with his petition in state court and have been included in the petition for removal and are properly considered by this Court.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993))). The bond documents speak of an obligation by Tesi to pay the United States and by their terms address a bond used as payment when bonds are required under 48 C.F.R. 28.103-3.  Title 48 of the Code of Federal Regulations sets forth the Federal Acquisition Regulations System, under which, in some circumstances, a bond may be executed by a bidder or contractor on a government contract to ensure fulfillment of its obligations to government agencies.  *See* 48 C.F.R. 28.001.  Such regulations have no bearing on this case, which deals with financing and debt collection related to the purchase of residential property.

Further, the "bonded promissory note" tendered by Tesi is not a negotiable instrument that may be "tendered" and thereby trigger section 3-603's discharge.  *See Wiggins*, 2010 WL 342246, at *3. Indeed, the bonds used by Tesi, backed by the private banker Denny Rae Hardin, have been recognized by one court as patently "bogus" and "plainly devoid of value." *In re Theresa Chabot*, 411 B.R. 685,

13

698 n.26, 704 (Bankr. D. Mont. 2009).  Tesi has simply failed to allege any facts to show that he legitimately tendered payment of the promissory note as contemplated by section 3-603.

Similarly, Tesi's claim under section 3-503 of the UCC fails. Section 3-503 governs the notice that must be given when a negotiable instrument is dishonored, i.e., is not paid when it becomes payable, as opposed to the scenario presented by the instant case: the defendants' refusal to accept a purported negotiable instrument in satisfaction of a prior note. Regardless, as just discussed, the bonds "tendered" by Tesi are without value and are not negotiable instruments that could be dishonored.

Finally, Tesi's complaint cites a Utah Court of Appeals case discussing the effect of the defrauding of one party to an executory contract by the other party.  If Tesi's intent with this citation was to make a claim that any or all of the defendants defrauded him, he has failed.  Tesi never discusses how the precedent applies to this case and wholly fails to make the allegations required by Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) (providing that "a party must state with particularity the circumstances constituting fraud . . . ."); *also cf. Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("In this court, the Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation

why they are fraudulent.").

III. Conclusion

In light of the foregoing, the Court concludes that Tesi has failed to make a prima-facie showing that this Court has personal jurisdiction over Dimon.  Thus, the motion to dismiss, to the extent it seeks dismissal of Tesi's claims against Dimon for lack of personal jurisdiction, is GRANTED.  The Court further concludes that Tesi's complaint fails to state a claim against Dimon, Chase, and JPMorgan.  Consequently, the motion to dismiss is also GRANTED to the extent it seeks dismissal for failure to state a claim upon which relief may be granted.

SIGNED June 7, 2010.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE